IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| WALTER MILLER, | : | Civil No. 1:12-CV-2267 |
| --- | --- | --- |
| Plaintiff, | : | |
| v. | : | ( Judge Conner) |
| MARY SABOL, et al., | : | (Magistrate Judge Carlson) |
| Defendants. | : | |

# REPORT AND RECOMMENDATION

## I. Statement of Facts and of The Case

### A. Procedural History

This is a *pro se* civil rights case brought by a prisoner housed at the York County Prison, Walter Miller, through the filing of a civil rights complaint on November 14, 2012. (Doc. 1.)

Miller's complaint reflects a fundamental, and profound confusion regarding the most basic of facts in a lawsuit–the identity of those sued. Thus, the caption of the complaint names twelve Defendants ranging from the warden, Mary Sabol, to numerous corrections officers.[1] The body of Miller's complaint then identifies only

---

[1] These Defendants named in the caption of Miller's complaint include: Warden Mary Sabol, Defendant Ross, Classification, Captain Daryman, Captain Hartman Officer Blouse, Officer Clark, Cert team Member S. Bolding, Cert team member K. Carrol, Cert team member, Officer Simpson, Officer Dutton,

ten prison officials as Defendants. (Id., ¶¶4-13.) Defendants Janice and Lamback, who were listed in the caption of the complaint, are not included in the litany of Defendants set forth in the body of this pleading.

The complaint then sets forth a factual recital which further compounds the confusion regarding Miller's claims. (Id., ¶¶ 15-29.) This factual recital spans a period from November 2010 to August 2012, but only makes factual assertions regarding the conduct of nine Defendants–Defendants Ross, Daryman, Blouse, Bolding, Carrol, Simpson, Dutton, Janice and Lamback. (Id.) There are no factual averments at all relating to Defendants Sabol, Hartman and Clark, and as for Defendant Daryman, the only factual averment contained in the complaint is that Daryman apologized to the Plaintiff. (Doc. 1, ¶15.) Thus, in the span of four pages in this pleading, Miller suggests that he is suing either 12, or 10, or 9 Defendants.

In addition, to the confusion concerning the identity of the Defendants, the complaint is flawed in several other basic respects. In numerous instances Miller's complaint contains factual averments, without any indication of who might have committed these acts. (Id., ¶¶12-19, 21,22, 24-27.) In other instances the acts alleged consist of verbal harassment, the denial of a single meal, or the failure to provide Miller with an extra blanket, matters which do not constitute claims of a

---

Lieutenant Janice and Officer Lamback.

constitutional dimension. (Id., ¶¶19-22.) In still other instances, Miller apparently premises the liability of individual Defendants upon their supervisory status in the prison, without any further factual averments. On the basis of this otherwise unadorned allegation, Miller seeks to hold these officials personally liable to him for compensatory damages, and also seeks injunctive and declaratory relief. (Id.)

Miller has not tendered the filing fee with this pleading, and thus appears to seek leave to proceed *in forma pauperis*. Upon a screening review of this complaint, we recommend that the Plaintiff be granted leave to proceed *in forma pauperis,* but that the Plaintiff's complaint be dismissed without prejudice to the Plaintiff endeavoring to correct the defects cited in this report, provided that the Plaintiff acts within 20 days of any dismissal order.

## II. Discussion

### A. Screening of *Pro Se In forma Pauperis* Complaints–Standard of Review

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

**(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards

> have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint

states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First,

the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the

pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B. Miller's Claims Against The Supervisory Defendants Fail as a Matter of Law

Judged against these legal benchmarks, we find that Miller's claims against Supervisory Defendants named in this action–Warden Mary Sabol, Captain Daryman, Captain Hartman, and Lieutenant Janice–clearly fail as a matter of law. In considering claims brought against supervisory officials arising out of alleged Eighth Amendment violations, the courts recognize that supervisors may be exposed to liability only in certain, narrowly defined circumstances.

For example, supervisory liability will rest on the basis that supervisors maintained deficient policies that resulted in the plaintiff sustaining an Eighth Amendment injury. In these kinds of cases based upon allegations of deficient policies, the Third Circuit has fashioned a four-part test based upon the reasoning of City of Canton v. Harris, 489 U.S. 378 (1989), for supervisory liability on an Eighth Amendment claim for failure to supervise. Under this test, "the plaintiff must identify

a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." Beers-Capitol, 256 F.3d at 134 (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). Accordingly, these approaches are summarized as follows:

> In sum, to make out a claim of deliberate indifference based on direct liability (i.e., insofar as the defendants are alleged to have known of and ignored the particular risk that Whetzel posed, the plaintiffs must meet the test from Farmer v. Brennan: They must show that the defendants knew or were aware of and disregarded an excessive risk to the plaintiffs' health or safety, and they can show this by establishing that the risk was obvious. For the plaintiffs' claims seeking to hold supervisors liable for their deficient policies, Sample's four-part test provides the analytical structure for determining whether the policymakers exhibited deliberate indifference to the plaintiffs' risk of injury, it being simply the deliberate indifference test applied to the specific situation of a policymaker.

Id.

Furthermore, it is equally clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named Defendants were prison supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot,

448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them.* See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F.Appx. 178, 181 (3d Cir. 2006)(emphasis added).

     Here, Miller does not allege that Supervisory Defendants directed the conduct complained of by the Plaintiff, or had knowledge of that conduct and acquiesced in it. In fact, in many instances Miller makes no factual averments whatsoever regarding these prison supervisors. To the extent that Miller premises the liability of these particular Defendants upon the assertion that they were legally responsible for the overall operation of the institution, without setting forth any further factual basis for a claim against him in the body of this pleading, this cursory style of pleading is

plainly inadequate to state a claim against a prison supervisor and compels dismissal of these Defendants. Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)[2]

### C. Miller May Not Sustain a Claim Based Solely Upon Alleged Verbal Harassment

Miller's complaint also lodges claims against various Defendants, alleging that the Defendants verbally harassed the Plaintiff, thereby exposing him to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. This claim also warrants only brief consideration since: "It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment. See McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir.2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir.2000); see also Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir.1997) (rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious.' ")." Robinson v. Taylor, 204 F. App'x 155, 156 (3d

---

[2]In particular, we note that there are no factual averments at all relating to Defendants Sabol, Hartman and Clark. As for Defendant Daryman, the only factual averment contained in the complaint is that Daryman apologized to the Plaintiff. (Doc. 1, ¶15.) Plainly, none of these allegations are sufficient to state a claim.

Cir. 2006). See, e.g., Rister v. Lamas, 4:CV-10-1574, 2011 WL 2471486 (M.D. Pa. June 21, 2011); Patterson v. Bradford, CIV. 10-5043 NLH, 2011 WL 1983357 (D.N.J. May 20, 2011); Williams v. Bradford, CIV. 10-5120 JBS, 2011 WL 1871437 (D.N.J. May 13, 2011); Ringgold v. Lamby, 565 F. Supp. 2d 549, 553 (D. Del. 2008); Sharpe v. Costello, 1:06 CV 1493, 2007 WL 1098964 (M.D. Pa. Apr. 11, 2007). Because Miller simply alleges in some instances that he was verbally harassed by officers, and given that it is "well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment," Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006), these verbal harassment allegations also fail to state a constitutional claim.

### D. A Number of Miller's Conditions-of-Confinement Claims Also Fail

Furthermore, in his complaint, Miller makes a number of allegations which we will liberally construe as complaints regarding his conditions of confinement. These allegations include the alleged denial of a single meal, and the failure to provide Miller with an extra blanket. (Id., ¶¶19-22.) These spare assertions do not in our view meet the exacting threshold for an Eighth Amendment conditions of confinement claim. "When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct.

1970, 128 L.Ed.2d 811 (1994)." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000). In this setting, it is also clear that: "The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). See Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

When courts have in the past considered specific conditions of confinement alleged by inmates under this Eighth Amendment standard, it is apparent that many of Miller's complaints simply do not "deprive [this] inmate[] of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347(1981). For example,"[p]ursuant to the case law related to the denial of bedding, the denial of [an inmate's] mattress for a short period of time does not rise to the level of a constitutional violation." Milhouse v. Gee, No. 09-2134, 2011 WL 3627414, *13 (M.D.Pa. Aug. 17, 2011) citing Lane v. Culp, Civ. No. 05–576, 2007 WL 954101 (W.D.Pa. Mar.28, 2007) (holding that denial of clothing and bedding for period of seven days does not rise to level of constitutional violation); Castro v. Chesney, Civ. No. 97–4983, 1998 WL 767467 (E.D.Pa. Nov. 3, 1998) ("Plaintiff's allegation that he

was deprived of a mattress and blanket for a period of two days, even if proved, would not rise to the level of a constitutional violation."); Stephens v. Cottey, 145 F. App'x 179, 181 (7th Cir. Aug.11, 2005) (holding no Eighth Amendment violation exists where prisoner spent three days without a mattress sleeping on a metal bedframe and five days with no bedframe sleeping on the floor).

Similarly, courts have frequently rebuffed inmate complaints like those made here relating to the packaging and presentation of meals. Thus, "while prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, see Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir.1980), there is no constitutional right to hot meals. See Brown-El v. Delo, 969 F.2d 644, 648 (8th Cir.1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold food)." Laufgas v. Speziale, 263 F. App'x. 192, 198 (3d Cir. 2008). Similarly, the "purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation. See Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir.1983) (only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim)." Lindsey v. O'Connor, 327 F. App'x. 319, 321 (3d Cir. 2009). Furthermore, courts have held that a brief interruption in water service to an inmate's cell does not, by itself, so deprive an inmate of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347(1981), that it constitutes an violation of the

Eighth Amendment. Banks v. Mozingo, 423 F. App'x 123, 127-28 (3d Cir. 2011), citing Williams v.Delo, 49 F.3d 442, 444–47 (8th Cir.1995) (finding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld).

Judged against these benchmarks, Miller's complaints that he missed one meal on February 19, 2012, (Doc. 1, ¶19.), and his averment that he did not receive an *extra* blanket in his cell on March 1, 2012, (Id., ¶21), simply do not constitute matters of constitutional dimension, and should be dismissed.

### E. The Complaint Should Be Dismissed Without Prejudice

We recognize that *pro se* plaintiffs should be afforded an opportunity to amend a complaint before the complaint is dismissed with prejudice, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, Miller has not alleged facts in his complaint that would state a claim upon which relief may be granted, and it appears that he may be unable to do so. Nonetheless, out of an abundance of caution, and in order to preserve the Plaintiff's rights, it is recommended that this matter be dismissed without prejudice to Miller attempting to amend this

federal complaint to state a claim upon which relief may be granted in federal court, by including proper allegations that meet the requirements of federal law.

## III. **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's complaint should be dismissed, but that the dismissal of this action be without prejudice to any final effort by Miller to timely allege facts in an amended complaint which might state a claim upon which relief may be granted, provided Miller acts within 20 days of any dismissal order.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 14th day of November 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge